**FILED**

**SEALED**

# UNITED STATES DISTRICT COURT
### for the
Western District of Texas

MAR 2 8 2014

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

GOOGLE, INC. (GMAIL EMAIL ) ACCOUNT:
RAMSEYCADENA@GMAIL.COM

)
)
)
)
)
)

Case No. SA: 14-MJ-0265

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Google, Inc. (Gmail Email) RAMSEYCADENA@GMAIL.COM, 1600 Amphitheatre Parkway, Mountain View, CA 94043

located in the _____Western_____ District of _____District_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment A and B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18/21 | 1956/841(a)(1) |

The application is based on these facts:
See attached affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

JAMES A. PHILLIPS, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/28/14

_____
*Judge's signature*

City and state: San Antonio, Texas

JOHN W. PRIMOMO, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH RAMSEYCADENA@GMAIL.COM THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE INC. | Case No.  SA: 14-MJ-0265 |

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent James A. Phillips, being first duly sworn, hereby depose and state as

follows:

INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for

information associated with certain accounts that is stored at premises owned,

maintained, controlled, or operated by GOOGLE Inc., an e-mail provider

headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.  The

information to be searched is described in the following paragraphs and in

Attachment A.  This affidavit is made in support of an application for a search

warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require

GOOGLE Inc. (hereinafter referred to as "GOOGLE") to disclose to the

government records and other information in its possession pertaining to the

subscriber or customer associated with the accounts, including the contents of

communications.

2. I am a Special Agent of the United States Drug Enforcement Administration (DEA) and have been so employed since 1997. My responsibilities include the investigation of possible criminal violations of the United States Narcotics Laws (Title 21, United States Code), the Money Laundering Control Act (Title 18, United States Code), and related offenses.

3. As a Special Agent of the DEA, I received extensive basic training at the U.S. Drug Enforcement Law Enforcement Training Center in Quantico, Virginia. This training covered all aspects of narcotics investigations. I have also attended professional training covering various aspects of financial investigations, including money laundering and asset forfeiture.

4. I have personally directed or assisted in numerous narcotics and money laundering investigations. I have also participated in the execution of search and/or seizure warrants on businesses, residences, safe deposit boxes, and vehicles. During the execution of several of these search warrants, electronic evidence, such as internet electronic mail communication (e-mail) have been seized from computers. Based upon my training and expertise, and from information obtained from colleagues, I know that individuals involved in crimes typically use the internet, more particularly, e-mail, to communicate with other parties involved in narcotics and money laundering, and various criminal violations. Money launders are not unlike any other individual in our society in that they maintain e-mails. These e-mails will normally be retained for long periods of time regardless of whether their value to the individual has diminished. Often times, this type of evidence is generated, maintained and subsequently

forgotten about. Hence, e-mails that one would normally think a prudent person would delete or remove from their e-mail account because of their incriminating nature are still possessed even years after they came into the possession of the money launder. Often times these individuals do not realize the incriminating nature of the e-mails they keep. It is also my experience that the longer duration that a criminal enterprise operates, the more evidence is generated during its course of commission.

5.    I am submitting this affidavit in support of an application which seeks the issuance of a federal warrant authorizing agents of the DEA and other federal and state agencies involved in the investigation of Ramsey CADENA to conduct a search of Ramsey CADENA'S e-mail account RAMSEYCADENA@GMAIL.COM, for evidence of violations relating to Title 21 U.S.C. § 841 and 846, 18 U.S.C. § 1956(a)(2)(B)(i) Money Laundering, Title 18 U.S.C. § 1956(h) Money Laundering Conspiracy, and other alleged and unknown violations of federal criminal law under the investigative authority of the Internal Revenue Service and other federal law enforcement agencies.

## STATEMENT OF PROBABLE CAUSE

6.    Ramsey Alberto CADENA (hereinafter referred to as CADENA) is the primary subject of a joint criminal investigation by the DEA, the Internal Revenue Service (IRS), the Department of Homeland Security (HSI) and the San Antonio Police Department for violations of narcotics and money laundering activities. Most of the individuals being investigated in this case have a history of being involved in the marijuana trafficking business. It is believed that CADENA is conspiring with Jennifer PEREZ

3

(hereinafter referred to as PEREZ), James Leeland PALMER (hereinafter referred to as PALMER), and Edward Michael BORCHARD (hereinafter referred to as BORCHARD) and others to distribute hydroponic marijuana from California to the San Antonio, Texas area. Information provided within this affidavit gives reasonable cause to believe that violations of 18 U.S.C. § 1956, 18 U.S.C. § 1957, 21 U.S.C § 841, and 26 U.S.C. 7201 have been and continue to be committed by the individuals above.

7. Your affiant believes there is probable cause that CADENA launders proceeds from the sale of illegal narcotics with the assistance of others, including, PEREZ, BORCHARD and PALMER and others. These individuals assist CADENA by, among other things, opening bank accounts at U.S. banks, establishing business entities, and transporting both narcotics and illegal proceeds from the sale of narcotics. In addition, these individuals cause the illegal proceeds to transfer through the U.S. banking system and/or received these illegal proceeds from the U.S. banking system. Since April 2009, it is estimated that CADENA and others sent/received illegal proceeds of over $2 million dollars through banking transactions in Texas and California.

8. The DEA's involvement in this investigation began in 2013 when local law enforcement entities sought DEA's assistance in investigating CADENA due to an inordinate number of complaints from private citizens regarding CADENA'S suspicious activities which were consistent with him being a drug trafficker. DEA began regular surveillance of CADENA in August of 2013. As the result of this surveillance, DEA identified JENNIFER PEREZ as an individual who had frequent and regular contact with CADENA. This surveillance together with other background information, set forth more fully below, caused DEA agents to

4

believe that PEREZ and CADENA were transacting illegal business together. Further, as the result of the surveillance, background information, and the acquisition through grand jury subpoenas of Bank of America account records pertaining to PEREZ and CADENA, more fully set forth below, DEA agents developed information indicating that CADENA and PEREZ had a criminal association with parties in California to include James Leeland PALMER and Edward Michael BORCHARD.

9. The following sets forth information regarding each of the subjects of this investigation and provides the basis for probable cause to believe they are participating with each other in a conspiracy to distribute marijuana.


## RAMSEY ALBERTO CADENA


10. In 2007, CADENA was arrested after a state search warrant was conducted at CADENA's residence by the Bexar County Sheriff's Office. During this enforcement action, and he while he was under arrest and after he had been advised of his Miranda rights, CADENA provided a detailed statement admitting to selling hydroponic marijuana and providing other details about his hydroponic distribution business. CADENA stated he was acquiring his marijuana from a source of supply located in Dallas, Texas. This information was never verified. This confession was recorded by video and audio. During the execution of the warrant, $15,000 in U.S. currency was seized along with an accounting ledger showing dates and quantities. After CADENA was charged by the state, the charges against CADENA were subsequently dismissed due to allegations of improprieties raised against the investigating officer who was the affiant for the state search warrant.

11. Between 1998 and 2012, CADENA was arrested seven times. Two of these arrests involve violations of state narcotics laws, two arrests involve state money laundering and firearms violations and two arrests involve traffic violations. It appears that only one of these arrests resulted in a conviction. Computerized criminal history records show that in 2005, CADENA was charged with possession of marijuana. In 2010, CADENA was found guilty of this charge and placed on five years of probation.

12. A search of Texas Workforce Commission (TWC) records show that CADENA has no reported source of wages from employment since 2009. On February 6, 2014 an Ex Parte request was filed with the Internal Revenue Service (IRS) requesting the Federal Income Tax Returns (Tax Returns) of Ramsey CADENA and Night Life Promotions (a business registered by CADENA) for tax years 2009-2013. Information obtained through the request indicates that no Tax Returns have been filed by and/or for CADENA or Night Life Promotions. Additionally, there was no wages or other source of income reported on CADENA or Night Life Promotions to the IRS from 2009 through 2013, except for small bank interest in 2011 and 2012 for CADENA.

13. Your affiant and other investigative team members have observed CADENA numerous times on surveillance. Your affiant has deducted that CADENA is extremely conscious of his surroundings. CADENA has been observed to often drive in a manner as to attempt to determine if he is being followed. He will routinely make U-turns, drive slow and then speed up, make many lane changes and drive through parking lots and not park. Based on your affiant's training and

experience, these type of driving maneuvers are consistent with CADENA performing counter-surveillance. Throughout this investigation, surveillance agents have observed a large volume of visitors frequenting CADENA's residence. Many times, these visitors will back into CADENA's driveway and leave a very short time later. This type of activity is consistent with the trafficking of contraband by CADENA. Surveillance agents have also observed CADENA to drive multiple vehicles. On frequent and regular occasions, CADENA has been observed meeting with PEREZ at PEREZ'S residence.

14. Cellular telephone toll records for cellular telephones used by CADENA and PEREZ have been acquired and analyzed. These records show in excess of 4,000 calls were placed between CADENA'S and PEREZ'S cellular telephones since May of 2012. During the course of this investigation, your affiant has not identified any cellular telephone records showing telephones subscribed in the names of Edward BORCHARD or James PALMER. However, based on my training and experience, I know it is common for persons conducting crimes to utilize cellular telephones in fictitious subscriber names or no subscriber name at all. An analysis of cellular toll records pertaining to CADENA'S telephones shows that CADENA'S telephones communicated approximately 375 times with cellular telephone numbers with California area codes between May 2012 to present. One of the subscribers in California is listed as "Slim Thug". As will also be further described below, on August 29, 2013, law enforcement officers seized $19,900.00 in U.S. currency from PEREZ after PEREZ attempted to mail the currency in a box to Edward BORCHARD, another co-conspirator of

CADENA further described below. This is significant because three days prior to the seizure of the $19,900.00 in U.S. currency, cellular toll records of CADENA's cellular telephone show twenty calls to a cellular telephone with a California area code. Your affiant believes that these communications were between CADENA and BORCHARD or PALMER (co-conspirators described below) or other unknown persons related to BORCHARD or PALMER in California involving the arrangements of CADENA ordering hydroponic marijuana to be purchased by CADENA and subsequently delivered to CADENA in San Antonio, Texas.

15. As shown below in the "Bank Records" section below, it is believed that CADENA launders proceeds from the sale of illegal narcotics with the assistance of others, including, PEREZ, BORCHARD and PALMER and others. These individuals assist CADENA by, among other things, opening bank accounts at U.S. banks, establishing business entities, and transporting both narcotics and illegal proceeds from the sale of narcotics. In addition, these individuals cause the illegal proceeds to transfer through the U.S. banking system and/or received these illegal proceeds from the U.S. banking system. Since April 2009, it is estimated that CADENA and others sent/received illegal proceeds of over $2 million dollars through banking transactions in Texas and California.

JENNIFER PEREZ

16. Your affiant was advised by San Antonio Police Department Officer Douglas Phillips that on March 30, 2012, Officer Phillips and the U.S. Postal Service personnel intercepted a package that contained approximately five pounds of hydroponic marijuana. This package was addressed to Jennifer PEREZ and was

8

sent from an address in the Santa Rosa, CA area. After a controlled delivery of the intercepted package to PEREZ, Officer Phillips and Postal Inspectors conducted a search of PEREZ'S residence pursuant to the issuance of a search warrant. Discovered during the search were boxes that contained approximately four additional pounds of hydroponic marijuana. PEREZ was subsequently arrested. Also discovered during the search warrant, were two empty boxes which had been previously shipped from the Santa Rosa, CA area. According to the shipping labels on the empty boxes, these boxes had weighed approximately ten pounds and eight pounds respectively. The Santa Rosa area is the area of California where BORCHARD and PALMER reside. Other items discovered during the search warrant included, hand-written papers containing numbers, symbols and letters consistent with drug ledgers, packaging materials, and $5,600.00 in U.S. currency. As the result of this arrest and the charges emanating there from, PEREZ pled guilty to possession of marijuana and received a two-year probation sentence which she is presently still serving. It should be noted, as further described in paragraph #34 below, during the months of February and March of 2013, CADENA paid James PALMER approximately $33,000.00 by check from CADENA's business Night Life Promotions for "contract labor". Your affiant believes that "contract labor" is a way to try to legitimize an illegal expenditure for exchange for services- in this case believed to be the service of selling and paying for marijuana.

17. On August 29, 20913, PEREZ attempted to mail a package of currency to California which was addressed to EDWARD BORCHARD at 2068 Bluebell

Drive, Santa Rosa, California. This this address is the same address which appears on BORCHARD's California driver's license. On August 29, 2013, Homeland Security Investigations (HSI) S/A Reyes Cano was notified by FedEx in San Antonio, Texas that a suspicious package was received by FedEx at their business located at 700 E. Sonterra Boulevard, San Antonio, Texas. Security staff of FedEx believed the package dropped off by PEREZ was suspicious because they detected the distinct odor of marijuana on PEREZ'S person at the time she submitted the package for delivery to BORCHARD. The sender of the FedEx package was identified as Jennifer PEREZ. The FedEx security personnel subsequently opened the suspicious package and identified four bundles of cash wrapped in plastic, further contained inside a shoe box. HSI S/A Cano subsequently seized the U.S. currency and an official bank count of the U.S. currency was determined to equal $19,990.00. To date, no persons have filed any claims to the seized U.S. currency. This is significant because an analysis of the cellular telephone records of PEREZ'S cellular telephone show that on August 30, 2013, PEREZ communicated three times with a cellular telephone number with a 707 area code. This 707 area code is in the Santa Rosa, California area- the same area code that BORCHARD provided the New Mexico State Police deputy at the time of his arrest in 2012, which is further described below. Your affiant believes that these communications were between PEREZ and BORCHARD or unknown persons related to BORCHARD in California in order most probably to explain the details of the seizure of the $19,900.00 in U.S. currency from PEREZ the day prior on August 29.

18.     Between 2000-2012, PEREZ has been arrested three times - once for state narcotics violations, once for assault causing bodily injury and once for forgery.

19.     A search of Texas Workforce Commission (TWC) records indicated that PEREZ had wages of $7,458 in 2011 working for Kohl's and $18,827 in 2009 working for a Gerardo Sanchez. On February 6, 2014 an Ex Parte request was filed with the Internal Revenue Service (IRS) requesting the Federal Income Tax Returns (Tax Returns) of Jennifer PEREZ for the years, 2009-2103. The Tax Returns and Tax Return information provided on PEREZ shows she filed Tax Returns in 2009, 2010, and 2011 reporting all the Form W-2 wages reported on her by employers. The Total Income reported by Perez on each of her Tax Returns was $18,826 for 2009, $17,227 for 2010, and $9,613 for 2011. PEREZ reported her occupation as a receptionist during 2009 and a customer service representative for 2010 and 2011. PEREZ reported her filing status as Head of Household with the same dependent daughter in each of those tax years. PEREZ did not have any wages or other sources of income reported on her to the IRS for 2012 or 2013, and she did not file any Tax Returns for those two years.

20.     On multiple occasions, your affiant and other investigative team members have observed PEREZ travel to the residence of CADENA and CADENA has been observed at the residence of PEREZ. Most recently, CADENA was observed at PEREZ' residence on March 6, 2014. On one occasion, the investigative team was on surveillance at PEREZ'S residence on September 11, 2013. During this time, your affiant  observed a gray/white Nissan 4-door vehicle back up to and park directly in front of PEREZ' closed garage door. Your affiant then observed a

white male driver and a female front-seat passenger. The occupants of the vehicle remained in the vehicle for approximately five minutes and then PEREZ' garage door opened and the male exited the driver's door and walked to the trunk of the vehicle. Once at the trunk, the male opened the trunk and removed a large black bag. The male struggled to carry the bag with both hands into the garage and out of sight from your affiant. The female passenger remained inside the vehicle.

Approximately ten minutes later, the male was observed by your affiant carrying the same large black bag as he exited the garage and placed the bag back into the vehicle trunk. The bag appeared to be much lighter and was being carried by the male with one hand. The male and female occupants then drove away and surveillance followed them. Surveillance then observed the vehicle drive to a nearby Walgreen's parking lot and remain in the car. At approximately 12:45pm, your affiant observed PEREZ' 2008 green Jeep Wrangler exit her garage with PEREZ driving. Surveillance followed PEREZ and watched her meet with the same gray/white Nissan vehicle that had recently arrived and left her apartment. Agents observed an exchange of a small bag between PEREZ and the male of the gray/white Nissan in the parking lot of the Walgreen's before both vehicles departed in separate directions. These convoluted activities are consistent with the occurrence of a drug/money transaction. Your affiant later learned that the same gray/white Nissan vehicle described above was a rental vehicle. A records check of the Arizona license plate identified the vehicle registered to Enterprise Rental. A subsequent review of the rental documents identified the renter was Steven HOOKS (hereinafter referred to as HOOKS) of

San Antonio, Texas. Your affiant positively identified HOOKS from his Texas driver's license as the same person driving the gray/white Nissan vehicle that carried a large black bag into PEREZ' garage. Computerized criminal history records show that HOOKS was convicted in 2002 for possession of marijuana. The very next day, your affiant observed PEREZ travel to CADENA's residence, back her vehicle into CADENA's driveway out of view and then leave a short time later. Your affiant believes that PEREZ delivered illegal narcotics to CADENA that she received the day prior from Steven HOOKS, as described above.

21. As set forth above, to date, since May 2012, based on cellular telephone toll records analyzed by your affiant during this investigation, PEREZ and RAMSEY have communicated with each other in excess of 4,000 times. During the course of this investigation, your affiant has no cellular telephone records showing subscriber name of Edward BORCHARD or James PALMER. However, based on my training and experience, it is common persons conducting crimes to utilize cellular telephones in fictitious names or no subscriber name at all. Your affiant knows that approximately 375 cellular telephone communications exist between CADENA and PEREZ with California based cellular telephone numbers. Your affiant strongly believes that these communications are between BORCHARD and/or PALMER. This belief is based on not only all of the facts outlined and described in this affidavit so far, but also the facts further described in detail below of the movement of U.S. currency through the banking system and the travel of CADENA, PEREZ, BORCHARD and PALMER. It is a reasonable

conclusion that persons conspiring together will have to communicate by multiple means (telephone calls, text messages, emails, etc.) and periodically meet in person in order to accomplish their conspiring goals: in this case, buy and sell illegal narcotics without detection and apprehension of law enforcement-something this group of conspirators have done successfully since at least 2009.

22.   As shown below in "Bank Records", it is probable that PEREZ launders illegal proceeds gains from the sale of illegal narcotics with the assistance of others, including, CADENA, BORCHARD and PALMER and others.  These individuals assist by, among other things, opening bank accounts at U.S. banks, establishing business entities, and transporting both narcotics and illegal proceeds from the sale of narcotics.  In addition, these individuals cause the illegal proceeds to transfer through the U.S. banking system and/or received these illegal proceeds from the U.S. banking system.  Since April 2009, it is estimated that PEREZ and others sent/received illegal proceeds of over $2 million dollars through banking transactions in Texas and California.

## EDWARD MICHAEL BORCHARD

23.   BORCHARD was arrested on February 16, 2012 after 91.5 pounds of marijuana were found in his Hertz rental car during a traffic stop by the New Mexico State Police near Albuquerque, New Mexico.   BORCHARD stated that he was traveling from California to Albuquerque or Texas to look for his son. BORCHARD informed the state police deputy that BORCHARD had no idea where his son was or where to look for him.  According to the New Mexico State Police report of BORCHARD's arrest, the deputy smelled an overwhelming odor of marijuana from inside BORCHARD's rental vehicle.  After BORCHARD

14

refused the deputy's request for consent to search BORCHARD's rental vehicle, the deputy utilized his certified narcotics K9 to conduct an exterior walk/sniff of BORCHARD's rental vehicle. The deputy's K9 alerted to the odor from the areas of the opened driver's window and the passenger side windows. The deputy informed BORCHARD of his narcotics K9 alert for the odor of drugs from inside of BORCHARD's rental vehicle. The deputy then asked BORCHARD if any drugs where inside the vehicle and BORCHARD responded no. The deputy then detained BORCHARD and the rental vehicle and secured a state search warrant for BORCHARD's rental vehicle. Upon execution of the search warrant, the deputy discovered and seized five duffle bags of raw marijuana weighing approximately 91.5 pounds. BORCHARD was subsequently arrested. BORCHARD pled guilty to state violations of distribution of marijuana. He received a deferred sentence and 18 months of probation from the state of New Mexico.

24. Between 1972-2012, BORCHARD was arrested three times. Two times for drunk driving and one time for narcotics violations in New Mexico, as described above.

25. A search of California wages database shows that BORCHARD had no source of wages from employment in 2013. On February 6, 2014 an Ex Parte request was filed with the Internal Revenue Service (IRS) requesting the Federal Income Tax Returns (Tax Returns) of Edward BORCHARD for the years, 2009-2103. The Tax Returns and Tax Return information provided on BORCHARD for 2009, 2011, and 2012 indicated he reported all the Form W-2 information for wages that

was reported to the IRS. The Total Income reported by BORCHARD on each of his Tax Returns was $90,582 for 2009, $55,207 for 2011, and $31,694 for 2012. BORCHARD reported his occupation as a sale representative on each of those tax years. Additionally, BORCHARD reported his filing status as Single for 2009, and then Married Filing Jointly with the same spouse in 2011 and 2012. The 2010 Tax Return has not been received to date from the IRS for analysis, but the information reported to the IRS on BORCHARD indicated he received $41,918 in wages during 2010.

26. Due to the fact that BORCHARD resides in California, DEA has not conducted any surveillance to date of BORCHARD in California.

27. Your affiant knows that approximately 375 cellular telephone communications exist between CADENA and PEREZ with California based cellular telephone numbers. Your affiant strongly believes that these communications are between BORCHARD and/or PALMER, who both reside in Santa Rosa, California. This belief is based on not only all of the facts outlined and described in this affidavit so far, but also on the facts further described in detail below of the movement of U.S. currency through the banking system between CADENA, PEREZ, BORCHARD and PALMER and the travel of CADENA, PEREZ, BORCHARD and PALMER to/from California and San Antonio. It is a reasonable conclusion that persons conspiring together will have to communicate by multiple means (telephone calls, text messages, emails, Facebook, etc.) and periodically meet in person in order to accomplish their conspiring goals: in this case, buy and sell

illegal narcotics without detection and apprehension of law enforcement-
something this group of conspirators have done successfully since at least 2009.

28.    As shown below in "Bank Records", it is believed that BORCHARD launders
proceeds from the sale of illegal narcotics with the assistance of others, including,
CADENA, PEREZ and PALMER and others.  These individuals assist by, among other
things, opening bank accounts at U.S. banks, establishing business entities, and
transporting both narcotics and illegal proceeds from the sale of narcotics.  In addition,
these individuals cause the illegal proceeds to transfer through the U.S. banking system
and/or received these illegal proceeds from the U.S. banking system.  Since April 2009, it
is estimated that BORCHARD and others sent/received illegal proceeds of over $2
million dollars through banking transactions in Texas and California.

<u>JAMES LEELAND PALMER</u>

29.    Your affiant has not located any recorded criminal history pertaining to
PALMER.

30.    A search of California wages database shows that PALMER had no source of
wages from employment in 2013.  On February 6, 2014 an Ex Parte request was
filed with the Internal Revenue Service (IRS) requesting the Federal Income Tax
Returns (Tax Returns) of James PALMER.  The Tax Returns and Tax Return
information provided on PALMER for 2009 through 2012 indicated he reported
all the Form W-2 information for wages that was reported to the IRS.  The Total
Income reported by PALMER on each of his Tax Returns was $40,065 for 2009,
$58,420 for 2010, $93,036 for 2011, and $68,885 for 2012.  PALMER reported
his occupation as a laborer in each of those tax years.  Additionally, PALMER

17

reported his filing status as Married Filing Jointly with the same spouse and two dependent children on each of the four Tax Returns. Beginning in 2010, PALMER began working for Foreign Automotive Group, Inc., which was the same employer of BORCHARD.

31. Due to the fact that PALMER resides in California, DEA has not conducted any surveillance of PALMER in California.

32. Your affiant knows that approximately 375 cellular telephone communications exist between CADENA and PEREZ with California based cellular telephone numbers. Your affiant strongly believes that these communications are between BORCHARD and/or PALMER, who both reside in Santa Rosa, California. This belief is based on not only all of the facts outlined and described in this affidavit so far, but also on the facts further described in detail below of the movement of U.S. currency through the banking system between CADENA, PEREZ, BORCHARD and PALMER and the travel of CADENA, PEREZ, BORCHARD and PALMER to/from California and San Antonio. It is a reasonable conclusion that persons conspiring together will have to communicate by multiple means (telephone calls, text messages, emails, Facebook, etc.) and periodically meet in person in order to accomplish their conspiring goals: in this case, buy and sell illegal narcotics without detection and apprehension of law enforcement-something this group of conspirators have done successfully since at least 2009.

33. As shown below in "Bank Records", it is believed that PALMER launders proceeds from the sale of illegal narcotics with the assistance of others, including, CADENA, PEREZ and BORCHARD and others. These individuals assist by, among other things,

opening bank accounts at U.S. banks, establishing business entities, and transporting both narcotics and illegal proceeds from the sale of narcotics. In addition, these individuals cause the illegal proceeds to transfer through the U.S. banking system and/or received these illegal proceeds from the U.S. banking system. Since April 2009, it is estimated that PALMER and others sent/received illegal proceeds of over $2 million dollars through banking transactions in Texas and California.

## BANK RECORDS

34.     The DEA and IRS received information from credible sources about suspicious activities related to bank accounts maintained by CADENA. According to the records obtained from JP Morgan Chase and Bank of America, the accounts of CADENA, PALMER, and BORCHARD show strong indications of interstate funnel account activity with ATM deposits in San Antonio, Texas and subsequent cash withdrawals in Santa Rosa, CA. From January 2009 through September 2013, approximately $1,274,530 in U.S. currency was deposited into CADENA's bank account in San Antonio, TX. From February 2013 to September 2013, approximately $78,488 in U.S. currency was deposited into PEREZ's bank account in San Antonio, TX. From September 2011 to April 2013, approximately $431,840 (approximately $66,000 of these deposits were made in San Antonio) in U.S. currency was deposited into PALMER's bank account which was established in Santa Rosa, CA. A majority of the deposits made into PALMER's California bank account were made in San Antonio, Texas branch locations. From July 2012 to June 2013, approximately $226,716 (approximately $48,800 of these deposits were made in San Antonio) in U.S. currency was deposited into

BORCHARD's bank account in Santa Rosa, CA. A majority of the deposits made into BORCHARD's account were made in San Antonio, Texas. In addition, CADENA made nine check payments to PALMER for "contract labor: totaling $33,400 during February and March in 2013. This was previously noted in paragraph #16 above.

35. According to the records of JPM Chase Bank and Bank of America, numerous deposits of U.S. currency were made into the accounts in amounts of less than $10,000.00. Based on your affiant's experience, this is one typical method used in order to introduce illegally obtained U.S. currency into the financial system with the hope of not being detected by personnel of financial institutions. The structuring activity occurs in several accounts of the co-conspirators in this investigation, including CADENA, PEREZ, PALMER and BORCHARD.

36. Debits from the bank account statements of PALMER and BORCHARD indicates four to five driving trips were conducted between California and Texas in late 2012 through early 2013. These debits relate to rental car expenses, purchases of gasoline, hotel room charges and dining expenses. The times and locations of these expenses show a distinct pattern of travel from Santa Rosa, CA and San Antonio, TX and back. Specifically, records show that multiple car rentals were made in the Santa Rosa, California area and then approximately 500 miles were driven prior to the return of the same rental car back to the Santa Rosa, California area. Additional records for bank debit cards of PALMER and BORCHARD also identified during this time frame that the 500 miles were traveled, gas purchases were made by either PALMER or BORCHARD in areas in California north of

Santa Rosa. After a short period of time after the return of these rental vehicles, more rental vehicle records identified that a subsequent vehicle was then rented and driven one-way and returned to a San Antonio, Texas rental car location. The records for bank debit cards of PALMER and BORCHARD continue to show that during these one-way rental vehicle trips from Santa Rosa to San Antonio, multiple debit card purchases of gas, food and hotels were identified. Your affiant believes that PALMER and BORCHARD initially made the car rentals in Santa Rosa for the purpose of acquiring and preparing the marijuana intended for sale to CADENA. Then, the subsequent vehicle rentals in Santa Rosa a few days later by PALMER and BORCHARD were for the purpose of transporting the marijuana to CADENA in San Antonio.

37.    According to the records of San Antonio Credit Union (SACU), Ramsey CADENA utilized SACU to finance the purchase of multiple vehicles between the years 2011-2013. Although CADENA financed the vehicles, he often provided U.S. currency and cashier's checks as payments. These loans were usually paid off in full prior to their maturity. A review of records obtained from the San Antonio Credit Union (SACU) for Ramsey CADENA showed that CADENA's customer profile includes his RAMSEYCADENA@GMAIL.COM email account. The records also indicate that SACU utilizes the RAMSEYCADENA@GMAIL.COM email account to notify CADENA when his electronic financial statements are available for review by CADENA. Based on your affiants experience and training, it is common for narcotics traffickers to utilize a loan to purchase a vehicle, and then to re-pay the loan with illegal drug

proceeds. The email communication between CADENA and SACU in reference to CADENA's vehicle loans and account activity pre-empted payments by CADENA utilizing drug proceeds.

## TRAVEL OF TARGETS

38.     Your affiant knows from his extensive training and experience that it is very common for persons engaged in illegal drug activities to not only communicate via electronic means ( telephones and computers), but to also periodically travel to meet in person to not only discuss their illegal drug activities, but to exchange drugs and or currency. It is also a common practice for persons to communicate in advance of travel to coordinate the time and place of their meetings and other activities. Records obtained by your affiant from Southwest Airlines for CADENA has identified that Southwest Airlines communicated with CADENA referencing his travel to and from San Antonio and California via his RAMSEYCADENA@GMAIL.COM account. Specifically, Southwest Airlines sent CADENA's bill and itinerary for CADENA's purchased airline tickets to RAMSEYCADENA@GMAIL.COM.

39.     During the course of this investigation, your affiant has learned that CADENA has traveled numerous times to California where BORCHARD and PALMER reside. In addition, your affiant has learned that BORCHARD and PALMER have traveled numerous times from California to the San Antonio, TX area where CADENA resides. Your affiant believes that CADENA is sourced and provided illegal narcotics by BORCHARD and PALMER in California. In return, CADENA pays BORCHARD and PALMER for the illegal narcotics received.

40.     During January 2014, your affiant served a DEA Administrative subpoena to Southwest Airlines for travel records of Ramsey CADENA. On February 3, 2014, your affiant received the requested records from Southwest Airlines. These records identified approximately twenty-eight times CADENA purchased one-way and/or round-trip airline tickets to/from San Antonio and California or San Antonio and Dallas. The records also identified that CADENA used his email account RAMSEYCADENA@GMAIL.com as his purchaser email for billing and itinerary purposes for thirteen trips. These dates of travel were identified by Southwest Airlines beginning August 2009 through November 2013. It should be noted that in paragraph #10 above, CADENA admitted during his arrest in 2007 that his source of supply for his hydroponic marijuana was in Dallas, Texas.

41.     During January 2014, your affiant served a DEA Administrative subpoena to US Airways for all travel records of James PALMER and Edward BORCHARD. On January 20, 2014 your affiant received the requested records from US Airways. The records identified between October 3, 2011 through July 13, 2013, PALMER and or BORCHARD purchased and traveled seventeen (17) times to and from California and San Antonio, Texas. Of these seventeen trips, seven (7) were purchased as one-way tickets from San Antonio, Texas back to California by PALMER. During two of these one-way trips, BORCHARD also traveled one-way with PALMER. Your affiant strongly believes that PALMER and BORCHARD are one of the sources of supply to CADENA for hydroponic marijuana. Based on this investigation and your affiant's training and experience, your affiant also believes the purpose for the many one-way trips by PALMER and BORCHARD from San Antonio, Texas back to California is that PALMER and BORCHARD were involved in the coordination of the ground transportation, via rental vehicles, of the illegal narcotics from California to the

23

San Antonio area. Once the illegal narcotics were safely in the San Antonio area, PALMER and BORCHARD then traveled back to California by U.S. Airways. In addition, ten (10) tickets were purchased as round-trip tickets from California and San Antonio by PALMER. The information received from US Airways identified eight of the ten trips by PALMER revealed PALMER traveled with Edward Michael BORCHARD, a co-conspirator of this investigation to/from California and San Antonio, Texas.

42.    During January 2014, your affiant served a DEA Administrative subpoena to Omni Hotels & Resorts for all guest records for CADENA, BORCHARD and PALMER. On February 21, 2014, your affiant received the requested records. These records identified CADENA, BORCHARD and PALMER made reservations at various Omni Hotels in Texas and California. CADENA was identified as having reservations at the San Antonio Colonnade property two times in 2011, the San Francisco property one time in 2012 and the San Antonio Colonnade property one time in 2012, and three reservations at the San Antonio Colonnade property in 2013. Each of CADENA's reservations were paid for by a credit card in CADENA's name; BORCHARD was identified as having reservations at the San Antonio Colonnade property two times in 2012 and one time at the San Antonio Colonnade property in 2013. Each of BORCHARD's reservations were paid for by a credit card in BORCHARD's name; and PALMER had reservations at the San Francisco property one time in 2012, and stayed four times at the San Antonio Colonnade property in 2013. Each of PALMER's reservations were paid for by a credit card in PALMER's name. In fact, the records identified that at least on one occasion, in January 2013, both BORCHARD and PALMER resided in the same guest room.

43.     Your affiant strongly believes that Ramsey CADENA utilized his Google Inc.

email RAMSEYCADENA@GMAIL.COM to facilitate his travel to meet

PALMER and BORCHARD and others yet unknown to further their illegal drug

trafficking activities.  In addition, your affiant also strongly believes that Ramsey

CADENA's Google Inc. email RAMSEYCADENA@GMAIL.COM  was and

continues to be utilized by CADENA to communicate with PALMER,

BORCHARD, PEREZ and others yet unknown additional information related to

their conspiracy to facilitate illegal drug trafficking activities.  Your affiant

believes that the requested search warrant to the court for the search of Ramsey

CADENA's Google Inc. email RAMSEYCADENA@GMAIL.COM will

ultimately identify other evidence of the known and unknown illegal drug

activities of CADENA, PALMER, BORCHARD and PEREZ, which will enable

your affiant to identify the full-scope of the CADENA Drug Trafficking

Organization (DTO).  This valuable evidence will assist your affiant and other

members of the investigative team to identify all the DTO's members, assets and

subsequently dismantle the DTO.

### IDENTIFICATION OF E-MAIL ADDRESS

44.     On March 3, 2014, your affiant sent an administrative subpoena to GOOGLE Inc.

requesting subscriber information and IP login history related to accounts

RAMSEYCADENA@GMAIL.COM.   On March 5, 2014, GOOGLE Inc.

provided a response indicating the following:

e-mail: RAMSEYCADENA@GMAIL.COM;   Google Inc. records identify this

email account was established on August 26, 2010 at 4:35pm by subscriber

Ramsey CADENA.

45. The IP login history given for account RAMSEYCADENA@GMAIL.COM ranged from August 30, 2013 to March 3, 2014. A review of the IP log-in history obtained from GOOGLE Inc. reveals a total in excess of approximately 13,000 "Login Tracker" transactions during the period of August 30, 2013 to March 3, 2014. The excess of approximately 13,000 log-ins occurred over multiple unique IP addresses in the United States. Included in these log-ins, are approximately 1,239 unique log-ins to CADENA's RAMSEYCADENA@GMAIL.COM account while physically in the state of California. The bulk of the remaining unique log-ins to CADENA's account were while he was physically in the state of Texas

46. A preservation letter was faxed to GOOGLE Inc. on March 4, 2014. This affidavit is asking for information preserved as a result of the preservation letter as well as any all other data beyond the dates of the preservation letter if possible up to the date of the search warrant.

47. Ramsey CADENA is using an e-mail account provided and maintained by GOOGLE Inc. to conduct and further narcotics and money laundering violations. Your Affiant seeks information related to the e-mail account to identify additional narcotics and money laundering schemes and to aid in the proving of the narcotics and the money laundering offenses.

## TECHNICAL BACKGROUND

48. In my training and experience, and through consultation with other Special Agents with the DEA and IRS, I have learned that GOOGLE Inc. provides a variety of on-line services, including electronic mail ("e-mail") access, to the

general public through www.google.com.  Subscribers obtain an account by registering with www.google.com.  During the registration process, GOOGLE Inc. asks subscribers to provide basic personal information.  Therefore, the computers of GOOGLE Inc. are likely to contain stored electronic communications (including retrieved and un-retrieved e-mail for GOOGLE Inc. subscribers) and information concerning subscribers and their use of GOOGLE Inc. services, such as account access information, e-mail transaction information, and account application information.

49.     In general, an e-mail that is sent to a GOOGLE Inc. subscriber is stored in the subscriber's "mail box" on GOOGLE Inc. servers until the subscriber deletes the e-mail.  If the subscriber does not delete the message, the message can remain on GOOGLE Inc. servers indefinitely.

50.     When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to GOOGLE Inc. servers, and then transmitted to its end destination.  GOOGLE Inc. often saves a copy of the e-mail sent.  Unless the sender of the e-mail specifically deletes the e-mail from the GOOGLE Inc. server, the e-mail can remain on the system indefinitely.

51.     A GOOGLE, Inc. subscriber can also store files, including e-mails, address books, contact or buddy lists, pictures, and other files, on servers maintained and/or owned by GOOGLE Inc.

52.     Subscribers to Google, Inc. might not store on their home computers copies of the e-mails stored in their GOOGLE Inc. account.  This is particularly true when they

access their GOOGLE Inc. account through the web, or if they do not wish to maintain particular e-mails or files in their residence.

53. In general, e-mail providers like GOOGLE Inc. ask each of their subscribers to provide certain personal identifying information when registering for an e-mail account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).

54. E-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via GOOGLE Inc. website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

55. In some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems,

billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

56. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require GOOGLE Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

57. I believed based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that on the computer systems in the control of GOOGLE Inc. there exists evidence of a crime and instrumentalities of same. Accordingly, a search warrant is requested for the email account of Ramsey CADENA identified as RAMSEYCADENA@GMAIL.COM. The above facts establish through physical surveillance, telephone toll records, travel records, and bank records that there is a close business and/or financial association between the parties to this conspiracy. Three of the four subjects of

the investigation have been previously convicted of marijuana trafficking crimes. It is significant that the unreported or under reported income by these subjects does not comport with the substantial deposits which were made in the various bank accounts they have utilized. It is also significant that most of these were cash deposits and oftentimes structured so as to avoid currency transaction reporting requirements.

58.     As to the subject email account of CADENA, CADENA has used this email account and address with financial institutions and airlines with which he has done business. Evidence of both his financial transactions and his travel is relevant to this ongoing investigation. It is probable that CADENA has provided this email account and address to other financial institutions and travel related businesses with whom he has done business and which are not known by this investigation. It is probable that CADENA'S account information will lead to the discovery of other financial transactions and travel which have been conducted by him during and in furtherance of this conspiracy.

59.     This Court has jurisdiction to issue the requested warrant because it is "a court with jurisdiction over the offense under investigation." 18 U.S.C. § 2703(a).

60.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

61.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including

the application and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, e.g., by posting them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

|  | Respectfully submitted, |
|  | James A. Phillips, Special Agent |
|  | U.S. Drug Enforcement Administration |

Subscribed and sworn to before me
on March 28, 2014:

THE HONORABLE JOHN W. PRIMOMO
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Place to Be Searched

This warrant applies to information associated with RAMSEYCADENA@GMAIL.COM that is stored at premises owned, maintained, controlled, or operated by **GOOGLE Inc.**, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

# **ATTACHMENT B**

## **Particular Things to be Seized**

### I.     **Information to be disclosed by GOOGLE Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of **GOOGLE Inc.**, **GOOGLE Inc.** is required to disclose the following information to the government for each account or identifier listed in Attachment A for the time period of January 1, 2008 to the present:

a.      The contents of all e-mails stored in the account, including copies of e-mails sent from the account;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      All records or other information stored by an individual using the account, including address books, contact and buddy lists, pictures, and files;

d.      All records pertaining to communications between **GOOGLE Inc.** and any person regarding the account, including contacts with support services and records of actions taken.

2

## II.    Information to be seized by the government

All information described above in Section I that would constitute a fruit, evidence or an instrumentality of a criminal violation of the statutes listed on the application for the search warrant seeking the email account information pertaining to Ramsey CADENA from January 1, 2008 to the present for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.    Communications between  RAMSEYCADENA@GMAIL.COM and any other party.

b.    Records relating to who created, used, or communicated with the account or identifier.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by **GOOGLE Inc.** and my official title is _____. I am a custodian of records for **GOOGLE Inc.** I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of **GOOGLE Inc.** and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

      a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

      b.     such records were kept in the ordinary course of a regularly conducted business activity of **GOOGLE Inc.,** and

      c.     such records were made by **GOOGLE Inc.** as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

| | |
|---|---|
| Date | Signature |

**SEALED**

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.   SA: 14-MJ-0265 |
| | ) | |
| GOOGLE, INC. (GMAIL EMAIL ) ACCOUNT: | ) | |
| RAMSEYCADENA@GMAIL.COM | ) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ WESTERN _____ District of _____ TEXAS _____ *(identify the person or describe the property to be searched and give its location)*:

Google, Inc. (Gmail Email) RAMSEYCADENA@GMAIL.COM, 1600 Amphitheatre Parkway, Mountain View, CA 94043

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment A and B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____ 4/11/2014 _____

*(not to exceed 10 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.      ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge

_____

*(name)*

☑ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for __30__ days *(not to exceed 30)*.

☐ until, the facts justifying, the later specific date of **FURTHER ORDER**

Date and time issued:   3/28/14  2:50 PM   *(signature)*

*Judge's signature*

City and state:   SAN ANTONIO, TEXAS        JOHN W. PRIMOMO, U.S. MAGISTRATE JUDGE

*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.:<br>　SA: 14-MJ-0265 | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

　　　　I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Place to Be Searched

This warrant applies to information associated with <u>RAMSEYCADENA@GMAIL.COM</u>
that is stored at premises owned, maintained, controlled, or operated by **GOOGLE Inc.**, a
company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

# ATTACHMENT B

## Particular Things to be Seized

I.  **Information to be disclosed by GOOGLE Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of **GOOGLE Inc.**, **GOOGLE Inc.** is required to disclose the following information to the government for each account or identifier listed in Attachment A for the time period of January 1, 2008 to the present:

a.  The contents of all e-mails stored in the account, including copies of e-mails sent from the account;

b.  All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.  All records or other information stored by an individual using the account, including address books, contact and buddy lists, pictures, and files;

d.  All records pertaining to communications between **GOOGLE Inc.** and any person regarding the account, including contacts with support services and records of actions taken.

## II.    Information to be seized by the government

All information described above in Section I that would constitute a fruit, evidence or an instrumentality of a criminal violation of the statutes listed on the application for the search warrant seeking the email account information pertaining to Ramsey CADENA from January 1, 2008 to the present for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.    Communications between  RAMSEYCADENA@GMAIL.COM and any other party.

b.    Records relating to who created, used, or communicated with the account or identifier.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC
## BUSINESS RECORDS PURSUANT TO FEDERAL RULE
## OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the

laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information

contained in this declaration is true and correct. I am employed by **GOOGLE Inc.** and my

official title is _____. I am a custodian of records for **GOOGLE**

**Inc**. I state that each of the records attached hereto is the original record or a true duplicate of

the original record in the custody of **GOOGLE Inc.** and that I am the custodian of the attached

records consisting of _____ (pages/CDs/kilobytes). I further state that:

    a.    all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth, by, or from information transmitted by, a person with

knowledge of those matters;

    b.    such records were kept in the ordinary course of a regularly conducted business

activity of **GOOGLE Inc.,** and

    c.    such records were made by **GOOGLE Inc.** as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal

Rules of Evidence.

| | |
|---|---|
| Date | Signature |